UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| WALTER A. HARDIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:16-cv-00045-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Walter Hardin seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Hardin's claims for supplemental security income benefits and disability insurance benefits. Mr. Hardin brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Hardin's motion for summary judgment but will GRANT judgment in favor of the Commissioner.

**I**

**A**

Plaintiff Walter A. Hardin filed an application for Title II disability insurance benefits and Title XVI supplemental social security in May 2013, alleging disability beginning January 1, 2011. [Transcript (hereinafter, "Tr.") 65.] Hardin's motion for summary judgment explains that Hardin suffers from degenerative disc disease and various pulmonary problems, including recurring hemoptysis, a history of pulmonary embolism, and ongoing complications from his lobectomy like post-thoracotomy syndrome. [R. 8.] Hardin's claims for Title II and Title XVI

benefits were denied initially and upon reconsideration. [Tr. 65.] Subsequently, a hearing was conducted upon Hardin's request. [*Id.*] Following the hearing, ALJ Bonnie Kittinger issued a final decision denying both of Hardin's claims for benefits. [Tr. 65-77.]

To evaluate a claim of disability for both Title II disability insurance benefit claims and Title XVI supplemental security income claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claims) *with* 20 C.F.R. § 416.920 (supplemental security income claims).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of the case, the ALJ determined Mr. Hardin meets the insured requirements of the Social Security Act through December 31, 2017. [Tr. 67.] Then at step one, the ALJ found Hardin had engaged in substantial gainful activity from July 10, 2012 through March 9, 2013, but that, since that time, there had been a continuous twelve month period during which Hardin did not engage in substantial gainful activity. [Tr. 67-68.] At step two, the ALJ found Hardin suffers from severe impairments of degenerative disc disease and recurring hemoptysis, status-post pulmonary embolism. [Tr. 68.] At step three, the ALJ determined Hardin's combination of impairments did not meet or medially equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. [Tr. 69.] Before moving on to step four, the ALJ considered the entire record and determined Hardin possessed the RFC to perform light work as defined in 20 C.F.R. §§ 414.1567(b) and 416.967(b), with certain limitations described as follows:

> [T]he claimant is able to lift/carry 20 pounds occasionally and ten pounds frequently, and he is able to stand/walk up to six hours and sit at least six hours in an eight-hour workday; however, he should be allowed to alternate sitting and standing at 45-60 minute intervals. He is able to climb ramps and stairs frequently; stoop, kneel, crouch and crawl occasionally, but should not climb ladders, ropes or scaffolds.

[Tr. 70.]

After explaining how she determined Hardin's RFC [*see* Tr. 70-75], the ALJ found at step four that, based on this RFC, Hardin is capable of performing various jobs that exist in significant numbers in the national economy. [Tr. 76.] Accordingly, the ALJ concluded Hardin was not disabled under 20 C.F.R. §§ 404.1520(g) or 416.920(g). [Tr. 77.] The Appeals Council denied Hardin's request for review [Tr. 1], and Hardin now seeks review in this Court.

## II

### A

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of*

*Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B**

Mr. Hardin first alleges the ALJ inappropriately weighed the evidence related to his pulmonary issues. Hardin maintains the ALJ's findings "gloss over" his severe pulmonary problems and that the ALJ ignored evidence related to his lobectomy and subsequent post-thoracotomy syndrome. [*See* R. 7-1 at 6, 9.] But the record suggests the ALJ's decision should not be overturned on this basis.

Whether or not the ALJ properly identified Hardin's severe impairments at Step Two of her analysis ultimately proves immaterial in this case. Sixth Circuit case law makes clear that where an ALJ finds at least one severe impairment and then considers both the severe and non-severe impairments during the remaining steps of the analysis, the fact that some of a claimant's impairments were not deemed severe is "legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Fisk v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007).

The ALJ did not list Hardin's post-thoracotomy syndrome as a severe impairment at Step Two, but she did find Hardin suffered from two other severe impairments: "degenerative disk disease and recurring hemoptysis, status-post pulmonary embolism." [Tr. 68-69.] The ALJ then considered those two severe impairments as well as Hardin's non-severe impairments later on in her analysis. For example, the ALJ references Hardin's lung surgery and subsequent chest and

5

flank pain [Tr. 70]; discusses Hardin's right lobectomy [Tr. 72]; explains that Hardin suffers from residual pain from his lung surgery [Tr. 73]; and makes clear that certain limitations are warranted specifically because of Hardin's thoracic issues. [*Id.*] The ALJ, then, obviously considered Hardin's pulmonary condition in the remaining steps of the disability determination. Accordingly, any omission of Hardin's pulmonary state as a severe impairment is harmless. *See Anthony*, 266 F. App'x at 457; *Leach v. Comm'r of Soc. Sec.*, No. 3:13-cv-2037, 2015 WL 1221925, at *7-8 (N.D. Ohio March 17, 2015) (conducting a similar analysis).

**C**

Hardin also argues the ALJ erred when weighing the medical evidence, because the ALJ assigned only partial weight to the opinion of Hardin's treating cardiothoracic surgeon but gave great weight to a non-treating agency examiner. The Court considers the ALJ's treatment of each of those physicians' opinions in turn.

**1**

First, the ALJ did not err when she decided to assign partial weight to the opinion of Dr. Jeremiah Martin, Hardin's treating cardiothoracic surgeon. The Social Security Administration has set forth certain guidelines that an ALJ must follow when determining how much weight to assign a treating medical source. The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2). Other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(c)(5); 416.927(c)(2)(i)-(ii), (c)(3)-(c)(5).

The regulations also contain a clear procedural requirement that an ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The purpose of the reason-giving requirement is to allow "claimants [to] understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (citation and internal quotation marks omitted). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546.

The ALJ's written opinion explains she assigned only partial weight to Dr. Martin's opinion because she found it internally inconsistent. [Tr. 75.] Dr. Martin's medical source statement indicates Hardin can reliably work for less than eight hours per day, but it also states that Hardin could sit for three hours, stand for three hours, and walk for three hours total per day.

7

[Tr. 868.] The ALJ took Martin's opinion to mean Hardin was actually capable of working nine hours per day total, if Hardin simply sat, stood, and walked for three hours each. [Tr. 75.] As Hardin points out in his motion for summary judgment, though, it is possible that Dr. Martin did not mean to suggest such a thing. Instead, Dr. Martin could have intended to indicate Hardin could either sit *or* stand *or* walk for a total of only three working hours per day. In the end, the medical source statement remains ambiguous.

In any event, the discrepancy is immaterial, because the ALJ set forth another adequate reason for assigning Dr. Martin's opinion only partial weight. As stated in her decision, she found that Martin did not support his opinion "with reference to specific clinical and diagnostic evidence that would justify the restrictions identified." [*Id.*] While Dr. Martin does list post-thoracotomy pain syndrome as a reason behind his diagnosis, Martin provides no additional medical evidence to back up his recommendations that Hardin refrain from almost all work. [*See* Tr. 868-69.] The opinions of treating physicians are only given substantial deference "when supported by objective medical evidence." *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The fact that Dr. Martin's opinion was not supported with clinical or other diagnostic evidence, then, is a good reason for assigning the opinion only partial weight under the relevant regulations. *See* 20 C.F.R. § 404.1527(c)(3) (explaining the importance of supportability and noting that "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion"). Furthermore, the Court notes that the ALJ appropriately gave at least some consideration to Dr. Martin's opinion despite its shortcomings. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *Fisk*, 253 F. App'x at 585.

**2**

Also, the ALJ did not commit reversible error when she assigned great weight to consultative examiner Dr. Jack Reed. Pursuant to Social Security Ruling 96-6p, opinions from agency consultants may be assigned greater weight than the opinions of treating sources in certain situations. *See* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). Further, an ALJ may rely on a consultative opinion even where the consultative examiner did not have access to the entire case record. *See Mock v. Colvin*, No. 15-CV-02-GFVT, 2016 WL 4626580, at *5 (E.D. Ky. Sept. 2, 2016) (collecting cases). In that situation, the regulations require only "some indication that the ALJ at least considered" the medical evidence which was unavailable to the consultative examiner "before giving greater weight to an opinion that is not based on a review of a complete case record." *Blakley*, 581 F.3d at 409 (citations and quotation marks omitted).

Here, the ALJ explained that she gave great, but not controlling, weight to the opinion of Dr. Reed, noting that he "reviewed all available medical evidence." [Tr. 74.] Dr. Reed issued his opinion on October 11, 2013, and thus could not have reviewed records related to Hardin's June 2014 lobectomy and subsequent post-thoracotomy syndrome. [*See* R. 7-1 at 4; Tr. 798-99.] Nevertheless, it is clear that the ALJ knew about the surgery and Mr. Hardin's related pain complaints, and that she took that information into account when determining Hardin's RFC. [*See* Tr. 70-73]; *Blakley*, 581 F.3d at 409. Because of this, the Court does not find the ALJ's decision to assign great weight to Dr. Reed's opinion to be grounds for reversal or remand.

**D**

Finally, Mr. Hardin takes issue with the ALJ's decision to afford little weight to an October 2012 functional capacity evaluation prepared by care providers at Kentucky Hand and

9

Physical Therapy. [*See* Tr. 818-44.] While the ALJ believed that evaluation was "obtained in connection with the claimant's Workers Compensation claim," Hardin points out that his treating orthopedic surgeon Dr. Hunt actually ordered the evaluation and contends the ALJ was wrong to assume it was related to Hardin's workers' compensation claim. [*Compare* Tr. 75 *with* Tr. 819.] Ultimately, Hardin maintains the ALJ should have given at least some weight to the evaluation. [R. 7-1 at 13.]

Again, Hardin's argument provides no real basis for reversal or remand. Even if the ALJ incorrectly associated the evaluation with Hardin's workers' compensation action, the ALJ adequately explained her rationale for giving little weight to the evaluation. Her decision notes the evaluation is inconsistent with the opinion of Hardin's treating surgeon and that the evaluation appears to serve a "relatively narrow purpose"—although in some ways the evaluation speaks to Hardin's general medical condition, the evaluation indeed focuses on Hardin's ability to return to his specific job as a saw operator at Rogers Foam, Inc. [*See* Tr. 75; Tr. 818-44.]

In the end, the Court cannot find the ALJ erred in how she evaluated Mr. Hardin's claims. The ALJ considered the opinions of Dr. Martin and Dr. Reed as discussed above, but she also considered the opinions of consulting psychological examiner Dr. Sillers, Hardin's treating orthopedic surgeon Dr. Hunt, and consultative examiner Dr. Johnson. [Tr. 74-75.] While she chose not to assign significant weight to the October 2012 functional capacity examination, she acknowledged its existence and explained the reasoning behind her decision. Further, the ALJ discussed at some length Mr. Hardin's pain complaints; she sympathized with the difficulty of objectively measuring pain and noted she "carefully considered" Hardin's complaints, ultimately

focusing on "the medical facts and clinical findings that would bear on [the pain] question." [Tr. 73.]

Importantly, the Court must uphold the ALJ's decision even if the Court would weigh the evidence differently, and even if substantial evidence also supports Mr. Hardin's arguments. *See Ulman*, 693 F.3d at 714; *McMahon*, 499 F.3d at 509. While substantial evidence may, therefore, support some of Mr. Hardin's positions, Hardin has not demonstrated that the ALJ's decision was not also supported by substantial evidence or that the ALJ failed to follow applicable procedural rules. For the reasons discussed above, the Court denies the motion for summary judgment filed by Mr. Hardin but grants summary judgment in favor of the Commissioner.

### III

Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Plaintiff Walter A. Hardin's Motion for Leave to File a Reply Memorandum [R. 9] is **GRANTED**. The Court has considered the tendered reply memorandum in reaching its decision, and the Clerk of the Court is **DIRECTED** to file the reply [R. 9-2] in the record;

2. The Plaintiff's Motion for Summary Judgment [R. 7] is **DENIED**;

3. The Commissioner's Motion for Summary Judgment [R. 8] is **GRANTED**; and

4. Judgment in favor of the Commissioner shall enter promptly.

This the 1st day of March, 2017.



Gregory F. Van Tatenhove
United States District Judge